UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD JAY DUPUIS II,

        Plaintiff,

    vs.

CITY OF HIGHLAND PARK
and HUBERT YOPP,

        Defendants.
_____/

Case No. 21-11034
HON. GEORGE CARAM STEEH

OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS (ECF No. 6)

This case arises out of plaintiff Ronald DuPuis II's suspension and ultimate termination from his employment with the Highland Park Police Department. Plaintiff alleges violations under the First Amendment and the Michigan Whistleblower's Protection Act. In lieu of an answer, defendants City of Highland Park ("City") and Highland Park Mayor Hubert Yopp filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). For the reasons set forth below, defendants' motion to dismiss is DENIED.

## FACTUAL ALLEGATIONS

DuPuis began his employment with the City in 2007 as a patrol officer in the City's Police Department. He was eventually promoted to Sergeant. On January 14, 2018, DuPuis was on-duty as a Sergeant and shift supervisor when three of his subordinates had an encounter with the driver of a Chevy Tahoe. The driver was Gregory Yopp, a son of defendant Mayor Yopp. Gregory was suspected of Operating While Intoxicated, child neglect or endangerment, violation of the Controlled Substances Act, Driving while License Suspended, possession of prescription medication outside of the prescription container in which they were dispensed, and No Proof of Insurance. After being briefed on the incident, DuPuis directed his subordinates to arrest Gregory. When Gregory refused to submit to a chemical test of his blood, DuPuis obtained a warrant for a blood draw.

DuPuis was suspended from active duty on April 5, 2018. DuPuis filed a lawsuit in Wayne County Circuit Court ("First Lawsuit"), alleging that the City took an adverse employment action against him in violation of the Michigan Whistle Blower Protection Act.

DuPuis returned to duty after engaging in the Union grievance arbitration process. Upon his return to duty, DuPuis became the Union President. On October 7, 2020, DuPuis sent an email to Police Chief

Coney and Deputy Chief Holcomb complaining that the noise from the network rack near the Supervisor's desk may be a MIOSHA violation.

A couple weeks later, someone employed by the City anonymously reported that DuPuis was seen "dry firing" his weapon (practicing firing with an unloaded weapon) on October 18, 2020. On October 23, Chief Coney sent DuPuis an email asking about the dry firing allegation. On November 27, DuPuis responded by email, stating "As far as dry firing, I do not recall dry firing, but it's certainly possible. Since the Department has knowingly and willfully failed to comply with MCOLES Active Duty Firearm Standard, I try to dry fire regularly." DuPuis then posted Chief Coney's email and his responsive email on the Union board.

On December 7, 2020, Chief Coney ordered DuPuis to explain why he posted the email and response on the Union board. On the same day, DuPuis sent Chief Coney an email explaining that he posted on the Union board to communicate with his Union members that the administration seems more concerned about him dry firing than about providing training, paying gun allowances, and signing bonuses. He also explained that he felt that everything he did was under scrutiny due to his actions as Union President and because of the First Lawsuit. DuPuis posted these emails on the Union board as well.

On December 11, 2020, DuPuis was suspended without pay. Charges were brought against him and a Chief's hearing was held January 8, 2021. On February 10, 2021, Yopp issued a letter terminating DuPuis' employment. DuPuis alleges that the adverse employment actions were taken against him by defendants in retaliation for his "speech, statements, communications, associations, petitions (including the First Lawsuit), and/or actions that were on or related to matters of a public concern and/or that were reports of violations or suspected violations of law to a public body or public bodies." (Complaint ¶ 58, ECF No. 1, PageID.10).

DuPuis filed this action in federal court on May 5, 2021, alleging a violation of his First Amendment rights and violation of the Michigan Whistleblowers' Protection Act.

## STANDARD OF REVIEW

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  "'[N]aked assertion[s]' devoid of 'further factual

enhancement'" are insufficient to "state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (other citations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (*citing Twombly*, 550 U.S. at 555).

## LAW AND ANALYSIS

I.     Consideration of Documents Outside the Pleadings

Without converting a motion to dismiss into a motion for summary judgment, the Court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). A Court may consider a document outside the pleadings "when [it] is referred to in the pleadings and is integral to the claims." *Commercial Money Ctr, Inc. v. Ill.*

*Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). The court is permitted to consider a document if it "fill[s] in the contours and details of the plaintiff's complaint and add[s] nothing new." *Yeary v. Goodwill Indus-Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir. 1997).

Defendants attach Exhibits A, B and D to their motion. Exhibit A is DuPuis' November 27, 2020 responsive email to Chief Coney regarding the allegation of dry firing and Exhibit B is the charge filed against DuPuis for the dry firing incident, which includes the suspension without pay. Both documents are referenced in the Complaint, and while they are not public records, they certainly "fill in the contours and details of the plaintiff's complaint and add nothing new." Exhibit D is an opinion issued by the Wayne County Circuit Court in the First Lawsuit. This order may also be considered to the extent it is relevant to plaintiff's claims in this case.

II.   Abstention

A. *Colorado River* Doctrine

Although federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted to them, they may abstain from exercising jurisdiction in limited circumstances, informed by "considerations of judicial economy and federal-state comity." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (citing *Colorado River Water Conservation*

*Dist. v. United States*, 424 U.S. 800, 817-18 (1976)). The principles underlying the *Colorado River* doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817. In determining whether *Colorado River* abstention is appropriate, the court must first examine whether the state and federal proceedings are parallel. *Romine*, 160 F.3d at 339. The parties and causes of action need not be identical but must be "substantially similar." *Id.*; *see also Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 Fed. Appx. 390, 394 (6th Cir. 2019).

Defendants point to the fact that plaintiff's complaint restates the central allegations of the First Lawsuit and relies on those allegations to support his new claim. However, the factual allegations underlying the First Lawsuit are not actually germane to the allegations in the present case. Rather, plaintiff alleges that he suffered an adverse employment action because he *brought* the First Lawsuit. The facts underlying the First Lawsuit are provided as background information only.

Plaintiff's two cases are based on different adverse employment actions that occurred years apart. In this case, plaintiff bases his claims on his indefinite suspension without pay that started in December 2020 and his termination in February 2021. In the First Lawsuit, plaintiff based his

claims on his suspensions on April 5, 2018 and September 26, 2018 and his de facto termination on September 26, 2018. The 2018 adverse employment actions are in turn allegedly based on different underlying actions taken by plaintiff. In addition, looking at the First Lawsuit as it currently exists, its resolution would not resolve the issues and claims in this case. *See Crawley v. Hamilton County Com'rs*, 744 F.2d 28, 31 (6th Cir. 1984).

Plaintiff's state court First Lawsuit is not parallel to this federal action. Therefore, the Court need not undertake an analysis of the *Colorado River* factors. *See Romine*, 160 F.3d at 339.

B. *Younger* Abstention

Abstention is required in another class of exceptional cases where there is a parallel, pending state criminal proceeding. *Younger v. Harris,* 401 U.S. 37 (1971). Such cases may include "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citing *Younger*, 401 U.S. at 367–68).

The First Lawsuit is not a state criminal prosecution, nor is it a civil enforcement proceeding "akin to a criminal prosecution." The First Lawsuit

also does not involve an attempt by plaintiff to enjoin or hinder the actions of the Wayne County Circuit Court, or any other court related to the pending state litigation. This case simply does not present any of the circumstances or concerns that support abstention under *Younger*.

III.    <u>First Amendment Retaliation Claim</u>

To survive a motion to dismiss on his First Amendment retaliation claim, plaintiff must adequately plead that he: (1) engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by his protected conduct. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999). For purposes of this motion, defendants concede that the second and third elements have been adequately pled.

To qualify as protected activity for a First Amendment retaliation claim, a public employee must establish that he spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). On the other hand, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id*. at 413. The relevant inquiries are whether the employee spoke as a citizen on a matter of public concern and, if so,

whether the government entity had an adequate justification for treating the employee differently from any other member of the general public. *Id*. at 418. As the Supreme Court has framed this dynamic, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id*. at 420 (citation omitted).

The statements that form the bases of plaintiff's First Amendment retaliation claim include the following:

    A.    <u>October 7, 2020 Email</u>

On October 7, 2020, plaintiff an sent an email to the Police Chief and the Deputy Police Chief informing them that the noise from the network rack near the Supervisor's desk may be a MIOSHA violation. While plaintiff's comments concerned the workplace in which he was employed, he alleges that he was speaking in his capacity as Union President on a topic of public concern.

In later refining the scope and contours of *Garcetti*, the Supreme Court held the doctrine should not be read too broadly to encompass all subject matter the speaker learned about in their employment. *Lane v. Franks*, 573 U.S. 228, 239 (2014). The Court stated, "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the

scope of an employee's duties, not whether it merely concerns those duties." *Id*. at 40; *Boulton v. Swanson*, 795 F.3d 526, 533-534 (6th Cir. 2015) ("After *Lane*, the *Garcetti* exception to First Amendment protection for speech residing in the phrase 'owes its existence to a public employee's professional responsibilities' must be read narrowly as speech that an employee made in furtherance of the ordinary responsibilities of his employment.").

Plaintiff alleges that he made the statements in the October 7, 2020 email as the Union President, as opposed to as an employee of the City. The subject matter of the email, a possible workplace safety violation, raises a matter of public concern. At the motion to dismiss stage, the Court finds that plaintiff has stated a plausible First Amendment retaliation claim based on the October 7, 2020 email.

B.     November 27, 2020 Email

On November 27, 2020, plaintiff sent an email to the Police Chief in response to the Chief's email asking plaintiff about an allegation that he had been seen dry firing his weapon. Plaintiff began by stating that he asserted the right to remain silent and was only responding to the Chief's email as a condition of his continued employment. In part, plaintiff wrote, "As far as dry firing, I do not recall dry firing, but it's certainly possible.

Since the Department has knowingly and willfully failed to comply with MCOLES Active Duty Firearm Standard, I try to dry fire regularly."

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Boulton*, 795 F.3d at 534 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). By writing that the Department has "knowingly and willfully failed to comply" with State mandated firearms standards required for all Michigan law enforcement agencies, plaintiff could be discussing a topic of public concern. *Id*. at 532 (citing *Banks v. Wolfe Cnty. Bd. of Educ.,* 330 F.3d 888, 896–97 (6th Cir. 2003) (speech addresses a matter of public concern when it alleges failure to follow state law). However, in looking at the context of the email, plaintiff's response is made in the course of his employment, to an allegation made against him as an employee, for activities he engaged in during his employment. The point of the email is that plaintiff is complying with an order to respond issued by his superior, so he does not lose his job. As a result, this speech is not protected conduct for purposes of stating a First Amendment retaliation claim.

  C. November 27, 2020 Post on the Union Board

Plaintiff asserts that on November 27, 2020, he posted the Chief's email related to the dry firing allegation, as well as his response, on the Union board in his position as Union President. The context of posting the emails on a message board is entirely different than responding to an order issued by a superior. Whereas plaintiff's response to his superior was required by the terms of his employment, the point of posting the emails was to share his opinions with union members. In other words, while the speech that was sent to the Chief by email was within the scope of plaintiff's employment duties, posting the email took the message outside of plaintiff's official work duties.

The message that plaintiff posted addressed a matter of public concern. "Proper training in use of force, including by firearm and Taser, is an important concern of the Constitution and required by Michigan state law. Concerns regarding law enforcement's use of excessive force are matters of public concern." *Boulton*, 795 F.3d at 535 (citing *Taylor v. Keith,* 338 F.3d 639, 645–46 (6th Cir. 2003); *see also Marohnic v. Walker,* 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law....")).

This statement as alleged by plaintiff may be protected from retaliation under the First Amendment.

D.   December 7, 2020 email

On December 7, 2020, plaintiff emailed the Police Chief after being ordered to explain why he posted the previous email correspondence on the Union board. In plaintiff's response he explained that: (a) he posted on the Union board to communicate with his Union members; (b) he wanted them to know that the administration seems more concerned about plaintiff dry firing than about (i) providing critical training in such areas as firearms, defensive tactics, legal updates, or even tactical driving and/or (ii) paying gun allowances and signing bonuses; and (c) he felt that everything he did was under scrutiny due to his actions as Union President and/or the First Lawsuit.

An email sent by an employee to a supervisor, in response to the supervisor's order that the employee provide an explanation for his actions, is a statement made pursuant to the employee's official duties. The December 7, 2020 email is not protected conduct that can support a First Amendment retaliation claim.

E. December 7, 2020 Emails Posted on the Union Board

Plaintiff asserts that he posted the December 7, 2020 email exchange between himself and the Chief on the Union board in his role as Union President. As discussed above regarding the November 27, 2020 posting, by sharing the email exchange on the message board, plaintiff is expressing a matter of public concern as a private citizen, as opposed to as an employee. This speech as alleged by plaintiff may be protected from retaliation under the First Amendment.

IV. *Monell* Theory of Liability

A municipality may be liable under 42 U.S.C. § 1983 for a constitutional violation only if it causes the deprivation of constitutional rights through an "official policy or custom." *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). For purposes of establishing municipal liability, a policy may be set by the government's lawmakers, or by those whose edicts or acts may fairly be said to represent official policy. *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 784 (1997). Liability may attach arising from a single action taken by a such a final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Board of County Com'rs. of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404-5 (1997).

Defendants argue that plaintiff has failed to identify a specific policy or custom that is the moving force behind the alleged constitutional violation.

Plaintiff responds that the City's liability under *Monell* can be established where defendant, Yopp, as the City's Mayor, was the final policymaker for the City and purposely retaliated against plaintiff for the exercise of his First Amendment rights by approving plaintiff's indefinite suspension and wrongful discharge. (ECF No. 1, PageID.2 and 8-11). Plaintiff specifically alleges that: "The adverse actions stemmed from purposeful discrimination, purposeful retaliation, and/or from the City's policy(ies) and/or custom(s). This includes, but is not necessarily limited to, actions taken by the individual Defendant as the City's final policymaker for purposes of establishing the City's policy(ies) and/or custom(s)." (Complaint ¶ 63, ECF No. 1, PageID.11). In further support of the allegation that Yopp was a final policymaker, plaintiff attaches the termination letter authored by Yopp and referenced in the Complaint, in which he identifies himself as "the appointing authority for the City of Highland Park Police Department." (ECF No. 9-2, PageID.133). Defendant's motion to dismiss plaintiff's constitutional claim against the City under *Monell* is denied, based on the plausible allegations that Yopp acted as the City's final policymaker

in terminating plaintiff. Plaintiff's constitutional claim asserted against Yopp in his individual capacity also survives the motion to dismiss.

## CONCLUSION

Now, therefore, for the reasons stated in this opinion and order,

IT IS HEREBY ORDERED that defendants' motion to dismiss (ECF No. 6) is DENIED.

It is so ordered.

Dated: August 27, 2021

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 27, 2021, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk